UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICOLE C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-01816-MJD-TWP |
| | ) |
| FRANK BISIGNANO, COMMISSIONER | ) |
| OF SOCIAL SECURITY, [2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Nicole C. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

The procedural background of this case is a bit unusual. Claimant applied for Disability Insurance Benefits ("DIB") in October 2021 alleging an onset of disability of March 1, 2020. [Dkt. 9-5 at 5.] Her application was denied initially and upon reconsideration, [Dkt. 9-4 at 3, 8],

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano was automatically substituted as the Defendant in this case when he became the Commissioner of the Social Security Administration on May 7, 2025. **The Clerk shall update the Docket to reflect this change.**

and Claimant then requested and was granted a hearing before an Administrative Law Judge, which was held before ALJ Candance McDaniel ("ALJ") on May 18, 2023. [Dkt. 9-2 at 59.] On May 17, 2023, the day before the hearing, Claimant filed an application for SSI. [Dkt. 9-5 at 36.] At the hearing, the ALJ noted that Claimant's date last insured for purposes of DIB was December 31, 2019; because of this fact, Claimant agreed to withdraw her DIB application shortly after the hearing. See [Dkt. 9-2 at 64; Dkt. 9-6 at 67]. That left only her SSI application, which meant that her alleged onset date was effectively amended to May 17, 2023, the date of her SSI application. On July 5, 2023, ALJ McDaniel issued her determination that Claimant was not disabled. [Dkt. 9-2 at 35.] The Appeals Council then denied Claimant's request for review on June 10, 2024. *Id.* at 13. After receiving an extension of time, Claimant filed her Complaint on October 11, 2024, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 1382c. Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is

disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 416.920(a)(4). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M. [v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. See *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). This is the standard the Court will apply in this case.

In his brief, the Commissioner argues that Plaintiff's arguments

are outdated, ignoring recent, binding precedent from the Seventh Circuit emphasizing the deference owed to an ALJ's conclusions, the minimal articulation requirement borne by the ALJ, and the burden of proof carried by plaintiffs. In fact, the ALJ relied on substantial evidence, a highly deferential standard meaning "only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Overcoming this standard imposes upon plaintiffs the burden to "point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024); *see also Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) ("[W]e will reverse an ALJ's decision only if the record "compels a contrary result.") (citation and internal quotation marks omitted).

[Dkt. 13 at 3.] The Commissioner's use of the term "outdated" is troubling. All of the Seventh Circuit cases relied upon by Claimant remain good law—they have not been overruled and the applicable statute has not changed. Therefore, the cases cited by the Commissioner cannot be read as changing the applicable standard; they must be read in conjunction with the cases that came before.

The Commissioner is correct that there are a few published Seventh Circuit cases that have stated that reversal is only appropriate if the record compels a contrary result. The first such case appears to be *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021), which quoted *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010) (quoting *Moab v. Gonzales*, 500 F.3d 656, 660 (7th Cir. 2007)). The quoted language was actually the standard of review for immigration cases. *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact [in an order of removal] are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"). The Social Security Act does not contain this language, but rather provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." As quoted above, the Supreme Court has defined substantial evidence in the Social Security context as "such relevant evidence as a reasonable mind might

4

accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. To the extent that the Commissioner's inclusion of this language in his brief is intended to suggest that "substantial evidence" should be interpreted to mean something different in this case than how it is defined in *Biestek*, the Court rejects that suggestion. And, indeed, *Moy*, a case decided just last month, confirms that the Court is still tasked with "conduct[ing] a critical review because a decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Moy*, 142 F.4th at 552 (citation and internal quotation marks omitted).

### III. ALJ Decision

ALJ McDaniel first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of May 17, 2023. [Dkt. 9-2 at 38.] At step two, the ALJ found that Claimant had the following severe impairments: "bilateral knee osteoarthritis, cervical degenerative disc disease, IBS, Crohn's disease, gastroparesis, obesity, depressive disorder, and anxiety disorder." *Id*. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* ALJ McDaniel then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except the claimant can do no climbing of ladders, ropes, or scaffolds and occasional climbing of ramps and stairs. The claimant can occasionally stop, crouch, crawl, and kneel. The claimant can have no concentrate[d] exposure to vibration. The claimant can tolerate noise levels of 1, 2, or 3 but not 4 or 5. The claimant can do no jobs in direct sunlight. The claimant [c]an have no concentrated exposure to fumes, odors, dusts, gases, or pulmonary irritants. The claimant can have no concentrated exposure to temperature extremes of heat or humidity. The claimant can have no exposure to hazards such as unprotected heights and the operation of dangerous moving machinery. The claimant can understand, remember, and carry out simple instructions. The claimant can interact occasionally with supervisors, co-workers, and the public. Jobs cannot require strict production quartos [sic] or assembly line fast pacing.

*Id.* at 41.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 46. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as marker (DOT 209.587-034), routing clerk (DOT 222.687-022), and router (DOT 222.587-038). *Id*. at 47. Accordingly, ALJ McDaniel concluded Claimant was not disabled. *Id.*

## IV.   Discussion

Claimant's basis for disability is rooted in her gastrointestinal disorders and chronic knee arthritis. Claimant testified that she spends 90-95% of her time in the bathroom either "using the facilities or vomiting." [Dkt 9-2 at 73.] Upon examination, VE Kim Bennett opined that a chronic need for three or more extra bathroom breaks, lasting 20-30 minutes, would be work preclusive. *Id.* at 93. However, ALJ McDaniel's RFC determination and hypothetical questions to the VE did not account for extra restroom breaks. Rather, the ALJ discredited Claimant's testimony regarding her symptoms because the ALJ found that

> [a]s for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because treatment for the claimant's allegedly debilitating conditions has been sparse. What treatment the claimant has received has been conservative and routine with few if any recommendations for pain management, surgical intervention, inpatient care, or other more aggressive treatment options that would be expected for limitations of the degree alleged. Though the claimant had documented bilateral knee arthritis she has no documented falls, does not require an assistive devise to ambulate, and exhibits a normal gait. (Exhibit 11F, 9F). Likewise, the claimant's degenerative disc disease of the cervical spine was noted to be mild with imaging exams showing no evidence of disc herniation (Exhibit 9F). The claimant's irritable bowel syndrome and gastroparesis are controlled with her medication regimen with the claimant noting that she did not experience any significant diarrhea or constipation at her most recent April 2023 treatment sessions and that her nausea was improved with Zofran (Exhibit 11F). The claimant testified that she requires infusions every 8 weeks which require approximately 2 hours per visit. Notes show that this treatment was first ordered in November 2022 and there is no evidence that even

>at an 8-week timetable that this would interfere with a work schedule. The claimant remains obese with stable weights, with notes showing that she even gained weight between sessions in 2023, despite her reports of IBS and gastrointestinal difficulties (Exhibit 11F).

[Dkt. 9-2 at 45.] This explanation is based on factual findings that are not supported by the evidence of record.

The Claimant's treatment record relating to her GI disorders is neither sparse nor conservative. The record indicates Claimant's first GI related complaints began in 2018 when she presented with nausea, diarrhea, and abdominal guarding. [Dkt. 9-7 at 317.] Claimant continued to present with GI issues at many appointments until her primary care physician sent her to a GI specialist in October 2021. [Dkt 9-7 at 275.] Claimant complained of nausea, rectal bleeding, hemorrhoids, and rectal pain. [Dkt. 9-8 at 69.] The record indicates an increasingly aggressive treatment and diagnostic plan beginning with a colonoscopy on November 16, 2021. [Dkt. 9-8 at 65.] Claimant was diagnosed with ulcerations of the colon and rectum, anal fissure, and grade one hemorrhoid. [Dkt. 9-8 at 35.] Conservative treatments did not resolve the symptoms, leading to a second colonoscopy and Botox injections. [Dkt. 9-8 at 64.] Claimant was diagnosed with chronic enteritis and colitis. [Dkt. 9-8 at 32.] Despite an increase in medication from creams to Botox injections, Claimant's symptoms persisted with only mild improvement. [Dkt. 9-8 at 51.] Claimant's treating physician ordered an esophagogastroduodenoscopy (EGD) to check for Crohn's disease. [Dkt. 9-8 at 60.] Upon completion of the exam, Claimant was diagnosed with Crohn's disease and began treatment with Avsola infusions. [Dkt. 9-8 at 38.] The new treatments healed Claimant's anal fissure; however, she continued to suffer from constipation, diarrhea, abdominal pain, and nausea. [Dkt. 9-8 at 43.] Claimant stated that Zofran helped **some** (emphasis added) and her dose of omeprazole was increased. [Dkt. 9-8 at 43.] Due to claimant's chronic

persistent symptoms, a four-hour gastric emptying study was ordered. [Dkt. 9-8 at 38.] The results showed very severe delayed gastric emptying. *Id.* Subsequently, Claimant was diagnosed with gastroparesis. *Id.*

ALJ McDaniel regarded Claimant's IBS and gastroparesis conditions as "controlled with her medication regimen" due to the reported improvement of her constipation, diarrhea, and nausea at the final recorded GI visit prior to the hearing, which occurred on April 13, 2023, one month prior to the hearing. [Dkt. 9-2 at 45.] To be sure, Claimant discussed some improvement in symptoms at her April 13, 2023, appointment. [Dkt. 9-8 at 38.] However, "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Bauer v. Astrue,* 532 F.3d 606, 609 (7th Cir. 2008). Further, as discussed above, a macro view of Claimant's GI disorders indicates a prolonged struggle over a five-year period. [Dkt. 9-8] The record indicates a consistent effort to diagnose and treat Claimant's symptoms. *Id.* After every diagnostic procedure, Claimant was found to be suffering from a new, chronic GI disorder. *Id.* Claimant continued to be prescribed more aggressive treatments beginning with simple creams and over the counter medications and ending with injections and hours-long biologic infusions. *Id.* Further, Claimant's GI physician notes end with "[p]atient is taking **a high-risk medication** of the biologic class which causes immunosuppression. This medicine puts the patient at increased risk of cancer and infection requiring frequent follow-ups and lab evaluation for monitoring. This is **high risk medical decision making**." (emphasis added) [Dkt. 9-8 at 50.] This is hardly indicative of "conservative and routine" treatment.

Even a micro view of the April 13, 2023, GI appointment does not show Claimant's conditions were "controlled" with any degree of certainty. Claimant reported some improvement

with bowel movements and nausea. [Dkt. 9-8 at 38.] However, Claimant continued to struggle with rectal bleeding, nausea, vomiting blood, difficulty swallowing, and the resurgence of anal fissure. *Id.* Far from determining her symptoms were controlled, the treating physician noted "[u]nfortunately[,] she is on many different medications that are either contraindicated or interact with all of the treatments for gastroparesis[,] making this very hard." *Id.* Additionally, Claimant's physician referred her to a motility clinic for gastroparesis treatments. *Id.* It is unclear why such a referral would have been made if Claimant's symptoms were under control. Lastly, Claimant was advised to follow a gastroparesis liquid diet "as tolerated when s[ymptoms] are severe." [Dkt. 9-8 at 41.] Such a recommendation infers that NP Zega expected Claimant's symptoms to continue to be severe at times. The expectation of recurring severe symptoms does not indicate a controlled condition.

When assessing a claimant's RFC, "[a]n ALJ also 'has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.'" *Stacy S. v. Kijakazi*, 2022 WL 2071098 at *6 (S.D. Ind. June 8, 2022) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)). By ignoring the macro view of Claimant's GI conditions as well as her continued complaints at the April 13, 2023, appointment, the ALJ ignored evidence potentially pointing to a disability finding and over-relied on the fact that some symptoms had shown some improvement.

Claimant's treatment for her knee pain can be characterized as conservative and sparse. SSR 16-3p governs how ALJ's are to evaluate a claimant's subjective symptoms claims. It provides, in relevant part:

9

> We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities . . . . Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.
>
> In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. **We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints**.

*Soc. Sec. Ruling 16-3p: Titles II & Xvi: Evaluation of Symptoms in Disability Claims,* SSR 16-3P (S.S.A. Mar. 16, 2016) (emphasis added) ("SSR 16-3p"). The ALJ failed to comply with this directive. She did not ask Claimant why she did not seek more treatment for her knee pain or consider whether there might be good reasons for her failure to do so. *See Shauger v. Astrue,* 675 F.3d 690, 696 (7th Cir. 2012) (citations omitted) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").[3] Her attorney did ask her at the hearing, however, and Claimant testified that physical therapy had not helped and that she was told that she was "too young for [knee] surgery" and that she would have to lose 50 to 100 pounds before she would be a candidate for

---

[3] The Court notes that the Seventh Circuit cites SSR 96-7p for this proposition and SSR 96-7p has been superseded by SSR 16-3p. However, SSR 16-3p retained the relevant requirement.

surgery.  *See* [Dkt. 9-7 at 428] ("For now would very much like to proceed conservatively especially given her elevated BMI.").  The ALJ did not explain why she inferred that Claimant was not a candidate for knee surgery because her condition was not severe enough to warrant it, rather than for the other reasons supported by the record.

The Commissioner argues that ALJ McDaniel's explanation of her RFC and subjective symptoms determinations meets the minimal articulation standard set by the Seventh Circuit. [Dkt. 13 at 4] (citing *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).  The minimal articulation standard does not allow the Court to ignore the fact that the ALJ's explanation for discounting Claimant's testimony about her subjective symptoms is not supported by the record. This requires remand.

To make this finding is not, as suggested by the Commissioner, to improperly "reweigh" the evidence; it is to point out that the ALJ failed to satisfy her obligations under the applicable law to comply with the requirements set forth in the agency's own rulings and to "rest [her] denial of benefits on adequate evidence contained in the record and [] explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).  Indeed, where, as here, the record contains no expert medical opinion of a claimant's functional limitations, the duty of an ALJ to properly consider and address the relevant medical evidence becomes all the more necessary.[4]

---

[4] Claimant's primary argument with regard to her knee impairment is that the ALJ was obligated to obtain a medical opinion regarding Claimant's RFC rather than relying on her own "lay opinion." [Dkt. 11 at 14.] An ALJ must support her RFC determination by substantial evidence in the record.  That does not necessarily have to include a medical opinion regarding the claimant's functional abilities, but it must include actual evidence of record.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 21 AUG 2025

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.